Good morning, your honors. Roger Siegel on behalf of the appellant, Mr. Rodriguez. I'd like to reserve approximately two minutes from my rebuttal. Thank you, Mr. Siegel. There's two main issues here. One has to do with the validity of the waiver of the appellate rights. The second has to do with the crime of violence enhancement. What the government is asking the court to do with respect to the enhancement is to disregard years of jurisprudence defining and then refining the statutory definitions of the separate enhancements of statutory rape and sexual abuse of a minor. And it's asking the court to collapse those specifically defined and separately freestanding provisions into one general sex, forcible sex offense hopper, if you will. And that's quite dangerous. And in so doing, what the government is asking the court to do is to essentially ignore the fundamental statutory rule of construction, which says that in order to – that the court has to read especially freestanding provisions in a manner that avoids surpluses. So what's the problem in the California statute, counsel? The California statute is extremely problematic as a forcible – as a forcible sex offense, which is what the government is arguing, what the court found, because it has – it just has one provision which basically says that an unconsented – and I'm paraphrasing it – but an unconsented touching is of intimate parts constitutes sexual battery when the person is restrained and there's a whole slew of case law. Okay. So what in there? Excuse me? What in there is not – does not satisfy the Federal requirements? There's a few things. First, that the requirement that it – in the manner that it's being asked to be applied by the government, that is, as to a minor victim, the plea – I'm sorry, the statute says without the consent, and that includes, at least as the government is asking the court to do, consent, whether it be adult, because the person is – has been drugged or is unconscious or is mentally incompetent, which is what the amendment to the 722 meant to do when they – when they specified the types of – of invalid consent, which statutory – which forcible sex offenses includes. And it does not – it – it includes – it includes sex offenses against a minor, at least as the government is asking the court to – to interpret it. Once it does that, then because the statute – because the defendant's conviction and that statute clearly does not meet any of the – meet the statutory rape or the sexual abuse of a minor requirements. I'm still having a hard time, counsel, figuring out why it doesn't satisfy the Federal requirements in the – in the guidelines. The Federal requirement for – What is it – what is it the California statute is missing here? What's – what's missing here that – that the government hasn't proven with the conviction of your – of your client? It's – it's – it's missing – it's – it's – it's overbroad. Okay. Why is it overbroad? It's overbroad because it allows – because the general language which – which allows – which – which requires that it be against the – the – the will of the of the – of the victim, which has been equated by the California courts to lack of consent, that includes, as interpreted by California law, which I submitted a supplemental 28-J letter, California has interpreted that to include convictions for minors. So, in other words, that general language against the consent or against the will of the victim – You can't have a sexual battery against a minor? Not under a forcible – the forcible sexual offense. If – if you're going to – if you're going to – to collapse statutory rape, crimes that don't – that do not qualify under the statutory rape or sexual abuse against a minor requirements, which have been developed throughout the years, into one broad hopper of forcible sex offenses, that eliminates all of the – all of the requirements which have been delineated by the courts. And it allows the court to evade it. That's what the – basically what the court held in – in – in Chavez, Acosta-Chavez a few weeks ago. In that case, there was a – there was a statute which allowed minors – it allowed minors up to 17 to be included in the – to be convicted under their equivalent statute. And what it – what the court said was they weren't going to decide for now whether you could have a forcible sex offense against a minor. They would put that off for another day, and I'm hoping that this is that day. But what they said was that because the age of consent in – in that – in that State was 17, it went beyond the age of – the Federal generic age of consent. The same is true here in California. Help me. Your client pleaded guilty, knowing that there were problems, and waived – and got – had an agreement and waived his appellate rights. So why isn't that enforceable in – in – if he knew that there were problems with his history? The waiver, which is written, drafted by the government, specifically said that it's – he's waiving sentences which are – which are not consistent with the terms of this agreement. The – the magistrate who conducted the change of plea very specifically explained to the judge what that meant is that there's – there's a – there is a certain level that applies to you, and you are waiving. And that was actually – that was actually all specified at pages 2 to 4 of the – of the agreement. And your client knew exactly what his – what his range was. It was a pretty broad range. It started at 8 months and went up to 71 months. It's based on different – different enhancements. The – what the plea specified was that it was an aggravated felony. That's in the – in the factual basis. Aggravated felony provides for a plea range for a criminal history category 2, if I'm not mistaken, of 8 to 14 months. So it was – the question is – so the defendant's reasonable interpretation, which is what the courts have ruled that you've got to go by, what this Court has ruled is that he was subject, since the only agreement in the plea about his enhancement was that it was an aggravated felony, was that he get an 8-level – 8-level bump, which put him in the total level 16 and criminal history category 2. Alitoson Where is that in the waiver? Verrilli, It's in the factual basis of the – it's in the factual – the last part of the factual basis. I believe it's on page 9 or 8 or 9 of the plea. It doesn't stipulate that it's a crime of violence. It stipulates that it's an aggravated felony. Right. Sexual battery and aggravated felony. Okay. And he agrees, I will be subject to the higher sentencing arrangements around – outlined in this agreement. The higher sentencing arrangements, which – sentencing ranges outlined in this agreement, all of which was spelled out in the first pages. He was told if you have level – if you have level 16 offenses and your category is 1 through 5 or 1 through 6, here's the range you're going to get. If you – on the other hand, if you've got 22 or 24 points, you're going to get a different sentence. Verrilli, It's with – it's with respect to the range that applies. And my – and what he was waiving was – was if the court determined – properly determined the range that applied, then he was waiving his right. What range – what range did the PSR and the district court find applied to your client? They found that level 16 applies, but that's not what the – that is not what the language of the waiver says. I thought that your client got more than level 16. No, level – 16 level enhancement, I'm sorry. 16 level enhancement. Level 24, correct. Okay. And the range on that would have been, is it 41 to 51 months? If I remember correctly. And your client got 30 months. So he's – that's your – the sentence is perfectly consistent. In fact, your client got a very favorable sentence under this. It's consistent with – with what I – what I'm submitting was the judge's misapplication of the wrong sentencing enhancement. Well, the sentence is consistent with this agreement. And you were told, if you pled guilty here, your client was told that he would lose his right to appeal. He was told that twice. It – if it's consistent with the level that applies to you, that's – those were the exact words by the magistrate. If you think that you can dispute anything that comes out of the – of the sentence, as long as you're within the range, this is no agreement at all. This – well, it's the government's language. And the government – and the Court has ruled that when the government drafts the plea waiver language, it's got to be – they could have included a waiver which did not say inconsistent with. They could have just included a general waiver. They could have just included a statute waiver. Two panels of this Court have already decided that this exact agreement is ambiguous and cannot be – and that that inconsistent language in the context of a – of a multi-layer provision is ambiguous and cannot be enforced. What is it that you want here? What's that? What is it that you're asking for, for your client? I'm asking for a remand with the finding that the – that the Court – that the 16-level crime of violence enhancement does not apply. So you're not asking to set aside the plea? No. And your client really got a pretty good deal. Well, that – that – that – The plea, if I understand it, the ranges were generous to your client. No. Well, no, that depends. He did not get a good deal because his – his crime was – was – I understand your point. I mean, he got the – but the bottom line is this Court has twice decided and hasn't decided to the contrary that this specific plea – Which of those cases? I cite them in my authorities, but Banos Medea, I think it is, and that was the most recent one just a few weeks ago, but the one in 2012 was – was – I can tell you in a second. They're both unpublished. They are both unpublished. Aguilar-Balbuena? Yes, exactly. Aguilar-Balbuena. Thank you, Judge. And in those cases, what was our bottom line? Bottom line was – was that – that it was ambiguous. It had to be – it had to be ruled against the – construed against the government as the drafter because they were the ones that included the inconsistent language, and it just wasn't – and because the – the magistrate, at least in Aguilar-Balbuena, they held that the magistrate didn't properly explain the meaning of inconsistent. Here, this is the – Well, what did they – what did we do? I can't remember. Oh. In Aguilar-Balbuena, the Court went ahead and addressed the appeal, said there wasn't an effective appellate waiver, and then they went ahead and said that the enhancement was improper – was improperly implied – improperly applied. In the other – in the second case, the Court held that the – the more recently decided case, the Court held that the enhancement – that the appellate waiver was not effective, but – and they, for different reasons, decided that the enhancement was applicable, but they went – got to the merits. The other thing I'd point out, which I noted in my brief, is that the Court has repeatedly held that even if the Court were to find an effective waiver for – where the – where the reasons are sufficiently compelling, and I addressed those reasons in my briefs, that the Court has the power to go ahead and decide the issue on the merits, regardless of whether the appellate waiver is effective or not. I'd like to – to – I did want to reserve a little bit of time. You're four minutes over your time, so, counsel, there isn't anything to reserve. I will allow you a minute. Thank you. Good morning. May it please the Court and counsel, Lisa Granoff on behalf of the United States for the District of Arizona, from the Tucson office. There are two issues before the Court, the defendant's valid waiver of appeal and the correct imposition of the 16-level enhancement by the district court judge. I will touch upon first the waiver, since it might actually stop us from getting to the merits of the case, but it will address both issues in any event. With respect to the waiver, Your Honors, the defendant did validly waive his right to appeal. As the Court has pointed out, there are several provisions within the plea agreement that advise the defendant that should a higher sentencing level apply, that that in essence makes the plea agreement still valid, and also there is no evidence in the record to support the defendant's claim that he didn't understand his appellate waiver. In fact, the record on appeal shows exactly the opposite. The magistrate ---- What is consistent with this agreement need? In this particular case, the defendant was actually subject to two possible sentencing enhancements, not the full range that is specified in the plea agreement, because one of those enhancements deal with a drug trafficking offense, which the defendant did not have here. Three of those sentencing enhancements were while the defendant was on supervised release, which even at the change of plea hearing, the magistrate asked the defendant and counsel whether there was any information available to us that he was, in fact, under supervised release, and he was not. So half of those enhancements, the sentencing ranges in the plea agreement, did not apply to the defendant's specific circumstance, and we did not know at a later time that he was under supervised release. Sotomayor, what I'm not understanding is how was he to know that he could not appeal the level at which he was sentenced at, because the ---- that was never really explained to him. We believe that it was, actually, Your Honor, by the magistrate court at the change of plea hearing. The magistrate judge made sure the defendant understood that only three of those sentencing levels applied to the defendant since he was not on supervised release, and that's on excerpt of Record Volume 1 at 57. Not only did he make sure that only three of those sentencing levels applied to the defendant, but the magistrate also explained to the defendant that depending on which criminal history category he fell under, only three of those sentencing levels were going to apply to him, and that is also at Volume 1, 57 and 58. The magistrate then went through the 8-level sentencing enhancement, the 12-level sentencing enhancement, and the 16-level sentencing enhancement with the defendant and asked him if he understood that those sentencing levels were the ones that applied to him, and the defendant ensured the magistrate that he did, in fact, understand that, and also that the magistrate explained that the appellate waiver would then apply to the defendant based on what sentencing level the district court found at the time of sentencing, and that is at Volume 1 at 59. And the defendant understood that he indicated to the magistrate, when asked point blank, that he did, in fact, understand not only which sentencing levels would apply to him at sentencing, but also that he was waiving his right to appeal. The magistrate, in addition to doing that, asked counsel himself whether or not he understood he believed that the defendant understood what level of punishment he might be subject to within the plea agreement, and whether or not, when asking the defendant, whether or not his counsel had actually explained the sentencing levels to him, and that both the defendant and defense counsel answered in the So, again, even more evidence on the record that not only did the defendant understood which sentencing levels applied to him, but that the appellate waiver would actually apply if the district court sentenced him in accordance to those sentencing ranges. And then, when the magistrate inquired of counsel himself whether he believed that the defendant understood all of the rights that he was giving up, counsel himself answered that, yes, he believed that the defendant understood his rights as well as the maximum possible punishment. Sotomayor, can you make it clear that he can't appeal the range? I'm sorry? Does that really make it clear that he can't appeal the level? Yes. Because the magistrate asked the defendant that, in terms of whether the district court understood the district court would be the one to apply the sentencing level, and that was an enhancement, the defendant did say that, yes, it would apply as well as sentencing. In addition, the district court, at the time of sentencing, asked the defendant whether he understood the terms of his plea agreement, and that is at Volume 1 at 48. The district court asked the defendant, and I quote, however, because I have sentenced you within the terms of your agreement, do you understand that you have agreed to give up your right to file any appeal or other challenge to the judgment and sentence of the court? And the defendant answered, yes. What do you do with our two memorandum dispositions that say that similar language in the agreement is ambiguous? I believe that the facts in this case differ because all along the way, both in front of the magistrate and in front of the district court, they took great pains to go over the sentencing enhancements and the sentencing ranges that would apply to the defendant, which I believe did not happen in the two memorandum opinions by this court. With respect to the sentencing enhancement, the statute of conviction that we're dealing with here is California Penal Code 243.4, subsection A. There is no dispute the defendant was sentenced to subsection A, which in fact states that the – in terms of the elements of the offense, that the person who touches the intimate part of another while the person is restrained and the touching is against the will of the person touching and is made for the purpose of sexual arousal, sexual gratification, or sexual abuse is guilty of sexual battery. If we look at whether or not that qualifies as a forcible sex offense, we have a generic definition for what a forcible sex offense based on this Court's ruling in United States v. Gallegos-Galindo, which states that any sex offense involving the absence of the victim's consent is in fact a forcible sex offense. So is it your position today that the 243.4a categorically satisfies the Federal standards? Yes, Your Honor. And that is a decision that we took at the district court level. I think the district court rejected that. The district court rejected that because the district court found that the definition within the statute of touching and the intimate part required touching skin to skin or over the clothing. And she had an issue with over the clothing. However, I must state that the interpretation that the court was taking was counsel's definition of what constituted a sexual act. But a sexual act is not the same as a forcible sex offense. Because a sexual act as defined by this Court has been in the context of sexual abuse of a minor, not in the context of a forcible sex offense. But I understood that in your brief you only defended this on the modified categorical basis, not as categorical. Because that is what the district court found. Right. However. That seems to me, then, that the government has conceded for purposes of this appeal that the statute is not categorical. You may want to press that in the future, but you haven't really briefed that question to us. And what actually happened was that in the meantime, while this appeal was pending, the DeCamp decision came out. And in the government's brief, we actually did state in a footnote that we were not conceding the point, but we were arguing the modified approach, because that's what the district court found. However, after the DeCamp decision came out, we now have to actually go back to the categorical definition first before we can get to the modified. Roberts, is the point still a problem for you? If the touching was not – was through the clothing of a person, then that would not qualify under the Federal standards, would it? Only if you're talking about a sexual act. But the definition of a forcible sex offense is only as to an offense that is sexual in nature. So we don't have a definition of what a sex offense is, and I don't believe that it should be used as the same definition as a sexual act, because that is not within the definition of a forcible sex offense. The only definition that we have for a forcible sex offense is any sexual offense that involves the absence of the victim's consent, which is, in fact, defined within the sexual battery statute, and we believe that it categorically fits within that definition. So I don't believe that a sexual offense, when we are defining that term under the And I thought that we had previously held that it did have to involve skin-to-skin contact. For a forcible sex offense, or are we talking about the definition under a sexual abuse of a minor? I'm – well, I would have to pull the case, but I thought that was a – I thought that one of our cases that we had specified that it had to be skin-to-skin contact. That is only within the context of sexual abuse of a minor, Your Honor. With respect to forcible sex offense definition, there is no definition for what an offense is, which is sexual in nature. We believe that a forcible sex offense is any conduct that is sexual in nature, and that would, by reference, since it is only any conduct, can be under the – over the clothing as well. But again, the Court's definitions for skin-to-skin contact is in reference to a sexual act under the sexual abuse of a minor statutes. We believe that the forcible sex offense actually is much more broad in nature than either sexual abuse of a minor, and contrary to defense counsel's argument before the Court, the government is not, in fact, seeking to collapse any definitions for statutory rape or sexual abuse of a minor, because those are very specific. They require penetration, they require the age of a minor, et cetera, and those are not within the definitions of a forcible sex offense. You're now arguing something that was not in your brief. So has the defendant had an opportunity to respond to this argument? No, Your Honor. I'm actually responding to the defendant's definition of what a sexual act is, and I believe that in my brief we stuck to our – what our definition of a forcible sex offense, which is any sexual offense that lacks consent of the victim. If the Court has no further questions, I see that I am over my time. Thank you. Thank you, Ms. Granoff. Mr. Siegel, I'll give you a minute. Judge, what the government is asking the Court to do is basically say, if the defendant is to say, put aside the rules that have been developed in the context of sex crimes against minors, and we're going to create this forcible sex offense that doesn't no longer requires what the Court has required with minors, which is skin-to-skin contact, which is touching of the genitals. We have some things that apply to – that are just sex offenses that don't require proof of minority, and we have other things that are abuse of minors. I didn't think that the question of whether the victim here was a minor was an issue. Well, the question – there were only two bases. First, when you get to the modified categorical analysis, the issue that Ms. Granoff raised, de compre, de compre cannot apply because the statute is not divisible. It simply says against the will of the defendant. And that includes everything under the son – or the victim. That includes everything under the son from unconscious, drug-induced and a minor. The plea colloquy, or the document that the government wants, is asking the Court to base its modified categorical analysis on. And I do agree that the Court – that the government has waived its argument on whether it qualifies as a categorical offense, but the document that the government is asking the Court to base the modified categorical analysis on is a minute entry which states that the – which says that the Court bases the factual basis on the plea taken – on a plea from the probable cause statement. It's completely against everything that Shepard said. But that's not the argument that was made today. That's – but that's the argument that's – that the – that the district court. Yeah. And the Court – and the Court, I think, rightly pointed out that – and those issues were briefed by us very heavily in the briefs. The Court points out the issue that the government probably may have waived whether it's a categorical crime, because they never – they did not discuss it. They said that the – It was pre-discounts, and the government said that she preserved it in a footnote, said that we're not conceding the point. Well, to say – to say that we're – to actually say that we're not conceding and to make an actual argument on it, I think the Court's cases are pretty clear that if the government does not make any – does not make an argument as to why it qualifies. Counsel, if we were to reach this argument and were to have to discuss discounts, I assume that both of you really would like an opportunity to brief that question before us, before we decided that. Certainly. But – but one issue that I think needs to be discussed, and I'll do it very briefly, is with respect to Descamp. Descamp simply does not allow the Court to get to the modified categorical analysis, because it's not a divisible statute. Well, would – if – since – since the district court decided this pre-Descamp and since the government seems to agree that this has to be sustained on the basis of a categorical offense, not on the basis of a modified categorical, would it make sense for us to send it back and have the district court determine the question of whether or not this is a categorical? That's a possibility. It's a rather time-consuming possibility, and what I would say is that the Court – I mean, that's certainly an alternative for the Court, that the government had – I raised the issue of the categorical analysis very, very – in a very detailed manner, both below and on appeal, and the government chose not to respond to that beyond saying we're not conceding, but they didn't argue it. So I would say that they've waived that argument. But under Descamp, it's – I think the Court has – the Court, as it's done recently, has the ability to say this is not a divisible statute. The government argued that it was divisible because sexual acts which are prohibitive under sexual battery, just in general, just sexual acts under sexual battery, they say, well, which means touching of intimate body parts in another provision that's defined to include a number of different things, some of which match, some of which don't. Touching in the statute is the element. It's not skin to skin or indirect. In another part of the statute, it says touching can either be skin to skin or indirect. So the problem is that the Court was never required as an element to find that it was that it was either – that it was skin to skin or that it was a genital, as opposed to skin to skin. Right. But if that difference mattered and it's connected by an or, then the statute is divisible. It's not connected by an or. It's the elements, and I'm not – I apologize for interfering. Yeah, but the definition of indirect or skin to skin is part of the statute because it's a definition of a particular part of the statute. But the element itself just requires a touching. And what the Court says is where you have alternative elements. Sure. And one doesn't match. At one point, it defines what the touching is. But the purpose of the statute is to determine if the Court necessarily decided whether there was – and all the statute requires touching. So there was no reason for the Court to decide whether it was skin to skin or whether it was – whether it was not. That's why you have the modified categorical. I think we understand the argument, and we have taken you way over your time. We thank counsel for the argument, and the case of Rodriguez is submitted. And thank you for your flexibility. I appreciate it.
judges: Timlin, Schroeder, Bybee